# Federal Bankruptcy Jurisdiction After October 4, 1982

The Supreme Court's ruling in *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982), invalidated those parts of the Bankruptcy Act of 1978 which gave power to non-Article III bankruptcy judges, but left its grant of jurisdiction to the district courts intact.

The Supreme Court's invalidation of certain jurisdictional provisions of the Bankruptcy Act of 1978 did not result in automatic revitalization of any part of the bankruptcy laws repealed in 1978. Accordingly, after the effective date of the Court's decision, the district courts will be obliged to rely on some source of authority other than the bankruptcy laws to refer bankruptcy cases to bankruptcy judges, even for limited fact-finding purposes.

September 14, 1982

## MEMORANDUM OPINION FOR THE ASSISTANT
## ATTORNEY GENERAL, OFFICE OF LEGAL POLICY

We have prepared this Opinion in response to several questions which have been raised relative to the bankruptcy jurisdiction of federal courts in light of the Supreme Court's decision in *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

In *Northern Pipeline,* the Court invalidated the grant of jurisdiction to the bankruptcy courts created by the Bankruptcy Act of 1978, Pub. L. 95–598, 92 Stat. 2549 (Act). In so doing, it stayed the effective date of its judgment until October 4, 1982, in order to "afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." 458 U.S. at 88. The Court's decision does not discuss the issue of where bankruptcy jurisdiction would lie after October 4, 1982, in the event Congress took no action, however. After carefully examining the issue, we have come to the conclusion that, while the issue is by no means free of doubt, *Northern Pipeline* invalidated only those provisions of the 1978 Act which conferred jurisdiction on non-Article III judges, and that it left intact the jurisdiction granted federal district courts by that Act. Thus it is our view that even if Congress takes no action to amend the Act by October 4, and even if the Court does not extend its stay, there would continue to be a basis for an Article III district judge to exercise jurisdiction over bankruptcy and bankruptcy-related matters.

A substantial part of the difficulty of resolving this important issue stems from the fact that we find no clear indication in the Bankruptcy Act of 1978 or in its

531

legislative history that Congress anticipated and prepared for a Supreme Court finding that the Act's grant of jurisdiction to bankruptcy courts was unconstitutional. And, as noted above, neither the Supreme Court decision in *Northern Pipeline,* nor its various opinions, addressed the issue. However, after reviewing the structure of the Act and scrutinizing its legislative history, we believe that it is correct to conclude that the grant of jurisdiction created by the 1978 Act was invalidated only insofar as jurisdiction vested in the district courts was redelegated to the bankruptcy courts created by the Act.

In Part I of this memorandum we examine the text and history of the jurisdictional provisions of the 1978 Act. In Part II, we analyze the several opinions in the *Northern Pipeline* case and explain why we believe that the Court's decision invalidated only part, and not all, of the jurisdictional grant in the 1978 Act. In Part III we discuss certain other theories which have been advanced as a basis for continued federal court bankruptcy jurisdiction after October 4, 1982, and explain why we do not agree with them.

## I. Bankruptcy Jurisdiction Under the 1978 Act

Under the bankruptcy laws in effect prior to 1978, the district courts were established as "courts of bankruptcy," 11 U.S.C. § 11a (1976), and were given original jurisdiction over bankruptcy cases under 28 U.S.C. § 1334.[1] Bankruptcy proceedings were generally conducted by "referees" appointed by the district court, under authority of 11 U.S.C. § 45. Under the Rules of Bankruptcy promulgated by the Supreme Court in 1973, bankruptcy referees were redesignated as "judges." *See* Bankruptcy Rule 901(7), 415 U.S. 1003 (1974).

Section 201(a) of Title II of the 1978 Act established, "in each judicial district, as an adjunct to the district court for such district, a bankruptcy court which shall be a court of record known as the United States Bankruptcy Court for the district." 28 U.S.C. § 151(a) (1976 ed. Supp. IV). Section 241(a) of the 1978 Act contained the Act's jurisdictional sections, codified as 28 U.S.C. § 1471, which provided in relevant part as follows:

> § 1471. Jurisdiction
> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the

---

[1] Section 1334 provided:
　　The district courts shall have original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy.
The district courts have had original jurisdiction over bankruptcy cases since the Bankruptcy Act of 1800, the country's first federal legislation pursuant to the grant given Congress by Art. I, § 8, cl. 4 of the Constitution. *See* 1 *Collier on Bankruptcy* ¶ 1.02 (15th ed. 1981). Section 1334 derives from the jurisdictional grant to the district courts in § 2 of the Bankruptcy Act of 1898, Ch. 541, 30 Stat. 545, 552. It was reenacted as part of Title 28 of the United States Code in 1911 in Pub. L. No. 61–475, Ch. 231, 36 Stat. 1087, 1093, and in 1948 by Pub. L. No. 80–773, Ch. 646, 62 Stat. 869, 931

district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

Section 241(a) of the Act thus vested primary jurisdiction over bankruptcy and bankruptcy-related matters in the district courts, 28 U.S.C. § 1471(a) and (b). It then provided that the bankruptcy courts established by § 201(a) "shall exercise" all of the jurisdiction conferred on the district courts, 28 U.S.C. § 1471(c).

The 1978 Act contained certain provisions governing the transition from old to new law. Section 401(a), 92 Stat. 2682, which repealed all of the old Bankruptcy Act, was to become effective October 1, 1979. See § 402(a). Section 402(b) provided that most of the provisions of the Act relating to the creation of the new bankruptcy courts and their jurisdiction would take effect on April 1, 1984. During the transition period, the "courts of bankruptcy" established under the old law (the district courts) would administer the substantive provisions of the new law. See § 404(a). Section 405(b) provided that the provisions of § 241(a) would define the jurisdiction of the "courts of bankruptcy" continued by § 404(a) during the transition period. In addition, § 405(a)(1) provided that existing bankruptcy judges would exercise during the transition period all of the jurisdiction and powers conferred on the old courts of bankruptcy by § 405(b). Thus, the transition provisions of the 1978 Act conferred the expanded jurisdiction of § 241(a) on the district courts under § 405(b), but delegated that jurisdiction to the existing bankruptcy judges under § 405(a)(1). Sections 405(a)(1) and 405(b) together allowed existing bankruptcy judges to exercise during the transition period the derivative jurisdiction which 28 U.S.C. § 1471(c) would provide for bankruptcy judges appointed under the new law after April 1, 1984.

## II. The Northern Pipeline Decision

At issue is the precise meaning of the Supreme Court's action in the *Northern Pipeline* case. Did the court invalidate *all* of § 241(a) of the 1978 Act, including its grants of jurisdiction to the district courts in 28 U.S.C. § 1471(a) and (b), or did it invalidate only the derivative grant to the bankruptcy courts in § 1471(c)? A careful reading of the plurality and concurring opinions, as well as attention to the scope of the district court's order which the Court affirmed, leads us to conclude that the Court invalidated only that part of § 241(a) which gave power to the non-Article III bankruptcy judges, and left its grant of jurisdiction to the district courts intact.

The district court's order in the *Northern Pipeline* case, entered on April 23, 1981, dismissed the adversary proceeding instituted by Northern against Marathon in the United States Bankruptcy Court for the District of Minnesota,[2] on

---

[2] Marathon's motion to dismiss had been previously denied by the bankruptcy judge Jurisdictional Statement, App. C. Marathon then appealed to the district court, pursuant to § 405(c)(1)(C) of the Act.

533

grounds that "the delegation of authority in 28 U.S.C. § 1471 to the Bankruptcy Judges . . . is an unconstitutional delegation of authority." *See* Jurisdictional Statement of the United States in the Supreme Court, Appendix A at 1a. In a memorandum opinion filed in the case on July 24, 1981, Judge Lord noted that Act initially vested jurisdiction in the district court under § 1471(a) and (b), but focused his discussion of the constitutional question on the mandatory "assignment or transfer of jurisdiction from the district courts to the bankruptcy courts" in § 1471(c). *Id.*, Appendix B at 5a. Judge Lord's conclusion that the case before him must be dismissed was based on the constitutional infirmities he found in "the delegation of authority in 28 U.S.C. § 1471 to the bankruptcy judges. . . ." *Id.* at 24a.

In the Supreme Court, according to the plurality opinion, the question presented by the *Northern Pipeline* case was "whether the assignment by Congress to bankruptcy judges of the jurisdiction granted in . . . § 241(a) of the Bankruptcy Act of 1978 violates Art. III of the Constitution." 458 U.S. at 52. In describing the provisions of § 241(a), the plurality opinion focused exclusively on the authority given the non-Article III bankruptcy courts created by the new law. It noted in an early footnote that while 28 U.S.C. §§ 1471(a) and (b) "initially vest[] this jurisdiction in district courts," § 1471(c) required that all of the jurisdiction conferred by the earlier sections be exercised by the bankruptcy courts. 458 U.S. at 54 n.3. The plurality rejected an argument that the bankruptcy court was merely an "adjunct" of the district court, and held that the 1978 Act had "impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court. . . ." 458 U.S. at 87. Then, "[h]aving concluded that the broad grant of jurisdiction to the bankruptcy courts contained in [§ 241(a)] is unconstitutional," the plurality affirmed the judgment of the district court. *Id.*

The two concurring Justices agreed with the plurality that the court's judgment should be affirmed. Though they confined their constitutional objections to "so much of the Bankruptcy Act of 1978 as enables a Bankruptcy Court to entertain and decide Northern's lawsuit over Marathon's objection," the concurring Justices agreed that the grant of authority was "not readily severable from the remaining grant of authority to Bankruptcy Courts under [§ 241(a)]. . . ." 458 U.S. at 91–92.

The plurality had addressed the question of severability in a footnote, which is worth quoting in full for the light it sheds on the exact scope of the Court's action:

> It is clear that, at the least, the new *bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon.* As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under Title 11 in a single non-Art. III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction

could not constitutionally encompass this and similar claims, it would *simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim-by-claim basis.* Indeed, we note that one of the express purposes of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes. *See* H.R. Rep. No. 95–595, pp. 43–48 (1977); S. Rep. No. 95–989, p. 17 (1978). Nor can we assume, as THE CHIEF JUSTICE suggests, *post,* at 92, that Congress' choice would be to have this case 'routed to the United States district court of which the bankruptcy court is an adjunct.' We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III in the way that will best effectuate the legislative purpose.

458 U.S. at 87–88, n.40. (Emphasis supplied.)

It is clear from this footnote that those portions of § 241(a) which the plurality declined to sever, and which the concurring Justices agreed were not severable, were those which gave "the new bankruptcy judges . . . jurisdiction to decide this state-law contract claim against Marathon." The plurality declined to sever "the jurisdiction of the bankruptcy court over these matters," from the bankruptcy court's jurisdiction over "other types of claims," so as to leave its remaining jurisdiction "subject to Art. III constitutional challenge on a claim-by-claim basis." It refused to sever these two facets of the "single statutory grant of jurisdiction" to the bankruptcy court in 28 U.S.C. § 1471(c) principally because "one of the express purposes of the Act was to ensure adjudication of all claims in a single forum. . . ." The plurality "could not conclude" that Congress would have chosen to divide jurisdiction over related claims between the bankruptcy court and the district court. Thus *all* of the derivative jurisdiction given the bankruptcy court in § 1471(c) was invalidated.

But nothing in the plurality or concurring opinions suggests that the jurisdictional grant to the district courts under § 1471(a) and (b) was itself unconstitutional, or that those sections would not survive the invalidation of the grant to the bankruptcy courts in § 1471(c).[3] A conclusion that the district courts' jurisdiction

---

[3] The dissenting opinion's characterization of the Court's holding on the severability issue bears out this interpretation. While Justice White criticized what he described as the plurality's "sweeping invalidation of [§ 241(a)]," he was plainly concerned with the plurality and concurring Justices' refusal to sever the bankruptcy courts' power over state law claims derived from 28 U.S.C. § 1471(b) from the rest of the jurisdictional grant. Justice White would have applied the "presumption" that " '[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.'" 458 U S at 96, n.3, quoting *Champlin Refining Co.* v. *Okla. Corporation Commission,* 286 U.S. 210, 234 (1932). This presumption seemed to Justice White "particularly strong when Congress has already 'enacted those provisions which are within its power, independently of that which is not'—*i.e.,* in the old Bankruptcy Act." *Id.* He thus apparently would at least have severed the bankruptcy court's authority over state law cases derived from § 1471(b), and permitted the bankruptcy courts to exercise derivative jurisdiction under § 1471(c) in all cases over which the district courts would have had jurisdiction under the old Act.

survives the Court's decision is entirely consistent with the plurality's description of the question presented by the case, with the language of its holding, and with the Court's affirmance of the district court's judgment.

This conclusion is also consistent with the applicable test for severability, which looks both to the structure of the statute, and to evidence of what Congress would have chosen to do had it been able to foresee the result of the *Northern Pipeline* decision. *See Champlin Refining Co. v. Okla. Corporation Commission*, 286 U.S. 210, 234 (1932). Section 1471(c) is "functionally independent" of § 1471(a) and (b), *see United States v. Jackson*, 390 U.S. 570, 586 (1968), and there is no "inherent or practical difficulty in the separation and independent [implementation]" of § 1471(a) and (b). *See Electric Bond & Share Co. v. SEC*, 303 U.S. 419, 435 (1938). Moreover, it seems a reasonable inference from the structure of the 1978 Act and its legislative history that Congress would have intended the bankruptcy jurisdiction of the district courts under 28 U.S.C. § 1471(a) and (b) to be severable from and to survive the delegation to the bankruptcy judges in § 1471(c).

The structure of the jurisdictional provisions of the 1978 Act reflects the debate in Congress over the status of the judges of the new bankruptcy courts created by the Act. As originally proposed in the House bill, which conferred Article III status on the judges of the new bankruptcy courts, the jurisdictional provisions of the Act made no mention of the district courts. *See* § 243(a) of H.R. 8200, 95th Cong., 1st Sess. (1977). The House bill's jurisdictional provisions granted the new bankruptcy courts "broad and complete jurisdiction over all matters and proceedings that arise in connection with bankruptcy cases." H.R. Rep. No. 595, 95th Cong., 1st Sess. 48 (1977). In contrast, the Senate bill, which created the bankruptcy courts as "adjuncts" of the district courts, gave jurisdiction initially to the district courts, then delegated all of the district court's jurisdiction to the bankruptcy courts in a manner essentially similar to the bill which was ultimately enacted. *See* § 216 of S. 2266, 95th Cong., 2d Sess. (1978). The Senate Report explained that the jurisdictional sections of S. 2266 were drafted in this manner to emphasize that the district courts were the "article III repositories for the broadened jurisdiction essential to efficient judicial administration in bankruptcy cases." S. Rep. No. 989, 95th Cong., 2d Sess. 16 (1978). The Senate version of the Act's jurisdictional provisions prevailed over the House version.[4]

The legislative history of the 1978 Act establishes that both Houses of Congress were fully aware of possible constitutional issues which would be presented if the new bankruptcy courts were not created pursuant to Article III. The House Committee on the Judiciary determined that "a court created without regard to Article III most likely could not exercise the power needed by a bankruptcy court to carry out its proper functions." House Report at 39. As a result, it reported out a bill which gave Article III status to the judges of the new bankruptcy courts. The Senate Committee on the Judiciary was also concerned

---

[4] Adjustments were made in other sections of the statute to accommodate House concerns that the judges of the new bankruptcy courts be independent of the district courts. *See* 124 Cong. Rec. 32,391 (1978) (remarks of Rep. Butler) (bankruptcy judges to be appointed by the President instead of by the district or circuit courts).

about the possible constitutional weakness of a statutory scheme in which bankruptcy judges were not appointed for life. Its solution, ultimately enacted in § 241(a) of the bill, was to emphasize the "adjunct" status of the new bankruptcy courts, and to devise jurisdictional provisions by which it hoped that "[t]he presently established U.S. district courts can serve as article III repositories for the broadened jurisdiction essential to efficient judicial administration in bankruptcy cases." Senate Report at 16. It seems reasonable to infer from the peculiar two-step formulation of the Act's jurisdictional sections fashioned by the Senate Committee, that it would have intended to vest jurisdiction in the district courts in the event some constitutional defect were found in the structure of the new bankruptcy courts which would serve to invalidate the redelegation of the authority to the bankruptcy courts. By making the district courts the initial "repositories" of bankruptcy jurisdiction, the Senate acted in a manner consistent with the expectation that the district courts would be residual repositories of bankruptcy jurisdiction if the bankruptcy courts were constitutionally unable to function independently.

### III. Other Theories of Federal Bankruptcy Jurisdiction After October 4, 1982

We are aware of two other theories which have been advanced as a basis for continued federal court bankruptcy jurisdiction after the Supreme Court's judgment in *Northern Pipeline* becomes effective on October 4, 1982. Both theories rely on the continued vitality, during the transition period provided in the 1978 Act, of the jurisdictional provisions of the old law. We discuss these theories in turn.

*A. Theory of the General Counsel of the Administrative Office of United States Courts*

In a memorandum dated July 22, 1982, Carl Imlay, General Counsel of the Administrative Office of United States Courts, concluded that notwithstanding the Supreme Court's *Northern Pipeline* decision, the bankruptcy courts "continued" during the transition period by § 404(a) of the 1978 Act may exercise the jurisdiction available to them under the old law until March 31, 1984. After October 4, 1982, when the Supreme Court's judgment becomes effective, the courts of bankruptcy "would effectively revert to their jurisdictional status under section 2a of the old Bankruptcy Act, 11 U.S.C. 11(a) (1976)." Thus the *Northern Pipeline* decision would, in Mr. Imlay's view, have only the limited effect of "invalidating the expanded jurisdiction granted under section 405(b) of the Bankruptcy Act of 1978. . . ." In sum, Mr. Imlay's interpretation of the 1978 Act would confine the interim effect (until April of 1984) of the *Northern Pipeline* decision to controversies over which there was no federal bankruptcy jurisdiction under pre-1978 law, and would permit the existing bankruptcy courts to continue to adjudicate all matters over which they had power under the old law.

While Mr. Imlay does not refer specifically to a residual statutory source of jurisdiction for the bankruptcy courts under the old law, he appears to find the requisite jurisdictional grant in former 11 U.S.C. § 11a. Moreover, he implies that the "courts of bankruptcy" continued by § 404(a) will be able to function after October 4 in much the same way that they did under the old law, with most matters being referred by the district court to bankruptcy judges pursuant to the reference provisions of 11 U.S.C. § 45.

The linchpin of Mr. Imlay's interpretation of the 1978 Act is his apparent assumption that Congress' preservation of the old bankruptcy court structure during the transition period in § 404(a) implied an intention to preserve the old jurisdictional grant to those courts as well. But neither the terms of the 1978 Act nor its legislative history support this conclusion. In § 401(a) of the Act, Congress repealed all of the old bankruptcy law, including 11 U.S.C. § 11a, effective October 1, 1979. While the old "courts of bankruptcy" were continued during the transition period by § 404(a) of the new law, § 405(b) specified that § 241 would "apply" to define the jurisdiction of these courts. Nothing in the terms of the transition provisions suggests that Congress intended there to remain any residual jurisdiction based on provisions which it was simultaneously repealing.

We also do not agree that after *Northern Pipeline* there is any legal authority in the bankruptcy law to refer matters to existing bankruptcy judges or referees. The provision permitting district court reference to bankruptcy judges in the old law, 11 U.S.C. § 45, has been repealed. While § 405(a)(1) of the 1978 Act permits district court reference to bankruptcy judges in the transition period, that section also defines the jurisdiction of the bankruptcy courts as that conferred on the district courts by § 405(b), which in turn incorporates the grant of § 241. Since *Northern Pipeline* struck down that provision insofar as it confers any authority on non-Article III bankruptcy judges, we are unable to find any basis in the transition provisions of the 1978 Act for the exercise of any authority by non-Article III judges.[5]

In short, we cannot agree with Mr. Imlay's conclusion that, in the absence of legislation, the courts of bankruptcy may continue to function through the transition period as they did prior to the passage of the new law.

## B. Bankruptcy Jurisdiction Under 28 U.S.C. § 1334

An argument has been made that 28 U.S.C. § 1334, the grant of original bankruptcy jurisdiction to the district courts under the old law, *see* note 1 *supra,* continues to provide a basis for federal jurisdiction over bankruptcy cases until April 1, 1984. Section 238(a) of the 1978 Act amended § 1334, so that it dealt only with the procedure for bankruptcy appeals. However, like § 241(a),

---

[5] While it is true that the old Rules of Bankruptcy were continued in effect by § 405(d) of the 1978 Act, their provisions relate only to practice and procedure under the bankruptcy laws, and may not be construed to have any substantive effect. *See Sibbach v. Wilson,* 312 U.S. 1 (1941). Therefore, the provision in the Rules for reference to bankruptcy judges may not be construed to confer any substantive authority on those judges.

§ 238(a) was not to take effect until April 1, 1984, and appeals during the transition period were to be governed by the provisions of § 405(c). *See* § 402(b). Section 1334 was not affected by the repeal of the old law in § 401(a) because it has been separately enacted into law as part of Title 28 in 1911 and 1948. *See* Pub. L. No. 61–475, 36 Stat. 1093 (1911); Pub. L. No. 80–773, 62 Stat. 931 (1948). Until April 1, 1984, therefore, when its amendment becomes effective, it may be argued that § 1334 continues to provide a basis for district court original jurisdiction over bankruptcy matters independent of any provision of the 1978 Act.

However, whether a court would find continuing vitality in § 1334 in the face of Congress' detailed provision in §§ 404 and 405 of the 1978 Act for jurisdiction over bankruptcy cases during the transition period is problematic. The question is essentially one of legislative intent, and Congress does not appear to have intended § 1334 to determine federal bankruptcy original jurisdiction in any way after the passage of the new Act. It seems more consistent with the 1978 Act as a whole and the transition provisions that § 1334 was intended only to define appellate jurisdiction.[6]

## IV. Conclusion

In sum, it is our view that the jurisdiction given the district courts over bankruptcy cases by the 1978 Act under 28 U.S.C. § 1471(a) and (b) was not invalidated by the Supreme Court in the *Northern Pipeline* case, and that district courts may continue after October 4, 1982, to function as courts of bankruptcy, applying the substantive provisions of the 1978 Act.

It does not follow from this conclusion, however, that district courts sitting as courts of bankruptcy may continue to operate as they did under the law in effect prior to 1978. In particular, it does not follow that they may continue to refer cases to bankruptcy judges as they did under the provisions of the old bankruptcy law. *See* former 11 U.S.C. § 45 (1976). The old bankruptcy law has been repealed, and all of the authority given to the bankruptcy judges under the 1978 Act has been invalidated by the Supreme Court's decision, effective October 4, 1982. After that date, the district courts will be obliged to rely upon some other source of authority to refer bankruptcy cases to bankruptcy judges, even for limited fact-finding purposes.[7]

If Congress does not act by October 4, 1982, to amend the 1978 Act, to cure the constitutional defects found by the Supreme Court in *Northern Pipeline*, and if the Court does not extend its stay, the already overburdened district courts will

---

[6] Even assuming the continuing efficacy of § 1334 as a basis of district court bankruptcy jurisdiction, the terms of that provision would probably not be construed to extend to some controversies which Congress sought to cover in the new 28 U.S.C. § 1471(b) (matters "arising in or related to cases under title 11"). In addition, as discussed in connection with Mr. Imlay's theory, we do not believe that a district court exercising jurisdiction under § 1334 could continue to administer the bankruptcy laws as it did under the reference provisions of the old law.

[7] The district court's authority to use magistrates and masters for certain purposes, *see* 28 U S C § 636 and Rule 53 of the Federal Rules of Civil Procedure, may serve as an interim device to lessen the burden on district courts until a legislative solution can be implemented.

be solely responsible for adjudicating all of the bankruptcy cases heretofore handled by the bankruptcy judges under old law.[8] The enormously increased caseload of the district courts will inevitably have an adverse effect on the orderly administration of the federal bankruptcy law, not to mention all of the other responsibilities of the district courts. It seems rather obvious that a more permanent solution must be found in the reasonably near future in order to avoid serious damage to the administration of justice in this country.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[8] We understand that there were approximately 685,000 bankruptcy cases pending on December 31, 1981, an that well over 500,000 such cases will be filed in 1982.